O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DANIEL JACOBSON,

               Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

Case No. EDCV 11-342-OP

MEMORANDUM OPINION; ORDER

     The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

   [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (ECF Nos. 7, 8.)

   [2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1)    Whether the Administrative Law Judge ("ALJ") properly considered the opinion of the treating physician;

(2)    Whether the ALJ properly assessed Plaintiff's residual functional capacity ("RFC"); and

(3)    Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

(JS at 2-3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of depression, history of alcohol abuse, and history of methamphetamine abuse. (Administrative Record ("AR") at 9.)  The ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels, with the following limitation:  Plaintiff should work with things, rather than people. (Id. at 11.)

Relying on the testimony of the VE, the ALJ determined that Plaintiff was able to perform his past relevant work as a diesel mechanic as actually and generally performed.  (Id. at 17.)  In the alternative, the ALJ asked the VE whether other  jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (Id. at 18.)  Based on the testimony of the VE, the ALJ determined that Plaintiff could perform the requirements of such occupations as auto body repair helper (Dictionary of Occupational Titles ("DOT") 807.687-010); store labor person ( DOT 922.687-058); and airport maintenance person (DOT 899.687-014).  (AR at 18.)

**B.    The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician.**

Plaintiff contends that the ALJ failed to provide "sufficient rationale" for disregarding the August 24, 2009, opinion of Plaintiff's treating opinion, Dr. Amador, failed to properly consider Dr. Amador's opinion that Plaintiff was not able to obtain and sustain full-time employment, and failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Amador's opinion.  (JS at 4.)

Specifically, on August 24, 2009, Dr. Amador completed a "Narrative Report (Adult)," consisting of a series of criteria, with items to be circled if they

3

1    "apply to the case," in which he indicated that Plaintiff had been seen by Riverside
2    County Mental Health since February 6, 2008, and was last seen on June 1, 2009;
3    Plaintiff's diagnosis was dysthymia,[3] major depression, recurrent, severe with
4    psychotic features; and alcohol dependence; his prescribed medications were
5    Citalopram, Quetiapene, Trazodone, Vistaril, and Carmpoal; his thought content
6    was concrete and ruminative; his psychotic symptoms included both auditory and
7    visual components, and influence his actions and behavior; his memory was
8    mildly impaired; his judgment was moderately impaired; there was evidence of
9    insomnia, depression, anxiety, panic episodes, decreased energy, and isolation;
10   Plaintiff was not able to maintain a sustained level of concentration, sustain
11   repetitive tasks for an extended period, or adapt to new or stressful situations; he
12   was not able to interact appropriately with others such as family, strangers,
13   co-workers or supervisors/authority; his attitude was anxious; he needs assistance
14   with medications and keeping appointments; he cannot complete a forty-hour
15   work week without decompensating; his prognosis was guarded; he has a long
16   history of depression; frequent relapses on alcohol; auditory and visual
17   hallucinations; and depressed mood, anhedonia, and difficulty keeping a job. (AR
18   at 599.)

19        With regard to this report, the ALJ found the following:
20        Little weight [is given to Dr. Amador's August 24, 2009, report] because
21        the claimant['s] MSE [Mental Status Examination] found that the
22        claimant had concrete thought processes; mildly impaired memory; no
23        reported suicidal or homicidal ideations; no reported inappropriate

26        [3] Dysthymic disorder consists of a chronically depressed mood that occurs
27   for most of the day more days than not for at least two years. Diagnostic and
     Statistical Manual of Mental Disorders-DSM-IV-TR 376 (Am. Psych. Ass'n ed.,
28   4th ed. 2000) ("DSM-IV").

4

1    affect; no reported social withdrawal; no reported poor grooming; and
2    the claimant was determined able to manage his own funds.

3         The undersigned . . . finds <u>no</u> support in the findings reported by
4    Dr. Amador.  The report primarily summarizes the claimant's subjective
5    complaints and diagnoses but does not present objective clinical or
6    laboratory diagnostic findings that support its conclusions.  In addition,
7    the opinion is not supported by the overall record.  Accordingly, the
8    undersigned gives little evidentiary weight to this opinion which, if
9    otherwise accepted as credible, would indicate that the claimant could
10   not perform any kind of work.

11   (<u>Id.</u> at 16 (citations omitted).)

12       Plaintiff claims that although the ALJ "seems to acknowledge" all of the
13   "unmarked symptoms" on Dr. Amador's report, he fails to mention the symptoms
14   that Dr. Amador *did* find.  (JS at 5.)  Plaintiff contends that "it is unfair to the
15   plaintiff for the ALJ to simply dismiss Dr. Amador's extremely relevant opinion
16   by only mentioning insignificant findings while ignoring relevant information and
17   symptoms that do support his findings that plaintiff does not show an ability to
18   maintain a sustained level of concentration, sustain repetitive tasks for an extended
19   period, adapt to new or stressful situations, interact appropriately with others . . .
20   or complete a 40-hour work week without decompensating."  (<u>Id.</u>)

21       It is well-established in the Ninth Circuit that a treating physician's opinions
22   are entitled to special weight, because a treating physician is employed to cure and
23   has a greater opportunity to know and observe the patient as an individual.
24   <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating
25   physician's opinion is not, however, necessarily conclusive as to either a physical
26   condition or the ultimate issue of disability."  <u>Magallanes v. Bowen</u>, 881 F.2d 747,
27   751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

28

whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

In this case, the ALJ gave little weight to Dr. Amador's report because it was inconsistent with Plaintiff's medical records as a whole and not supported by

6

1  objective clinical evidence, internally inconsistent, and unduly reliant on
2  Plaintiff's subjective complaints.  (AR at 16.)  As discussed below, the Court finds
3  these to be specific and legitimate reasons, supported by substantial evidence.

4      1.    **Dr. Amador's Opinion Was Inconsistent with the Record as a**
5            **Whole and Supported by Substantial Evidence.**

6      In his decision, the ALJ set forth a detailed summary of Plaintiff's mental
7  health evidence, noting that "[d]uring the period of adjudication, the claimant's
8  mental status examinations . . . and findings were unremarkable and supported a
9  finding of moderate impairment."  (Id. at 13.)  He then reviewed Plaintiff's various
10 MSEs and reports by treating physicians, including (1) a December 14, 2007, MSE
11 from Riverside Mental Health noting that although Plaintiff was depressed and
12 anxious, he was also alert and oriented to time, place, person, and situation;
13 exhibited calm and cooperative behavior, good eye contact, and good grooming;
14 slow speech; goal directed and logical thought processes; no suicidal or homicidal
15 ideations; no evidence of obsessions, compulsions, delusions, or hallucinations;
16 good impulse control; good insight and judgment; and stable mental health with
17 substance abuse stabilizing (id. (citing id. at 199-200)); (2) a February 6, 2008,
18 MSE by Dr. Terry Roh, of Riverside Mental Health, revealing that Plaintiff was
19 depressed but oriented to time, place, person, and purpose; had slightly impaired
20 concentration and memory due to alcohol blackouts; had normal speech, motor
21 activity, eye contact, and thought processes; no reported delusions, hallucinations,
22 or evidence of obsessions, compulsions, or phobia; fair impulse control; and fair
23 insight and judgment (id. (citing id. at 323)); (3) a June 2, 2008, MSE by Dr. Roh,
24 noting that Plaintiff complained of depression, decreased energy, and isolation;
25 had a pleasant attitude; exhibited clearly organized thought; had intact memory
26 and judgment, and could maintain a sustained level of concentration and repetitive
27 tasks for an extended period; could interact appropriately with others, including
28

7

family, friends, and co-workers; and could complete a forty-hour work week without decompensating (id. (citing id. at 287)); (4) an August 19, 2008, Riverside Mental Health Report noting that Plaintiff had clearly organized thought processes; intact memory; mildly impaired judgment and pleasant attitude; and a stable prognosis (id. (citing id. at 306)); (5) a February 26, 2009, VA hospital report that Plaintiff was oriented to time, place, and person; had a cooperative attitude and appropriate eye contact; had linear thought processes; no suicidal or homicidal ideations; no hallucinations; fair concentration; and fair insight and judgment (id. (citing id. at 438)); (6) an August 18, 2009, VA hospital report noting that despite complaints of recent suicidal ideations and feelings of hopelessness and helplessness, Plaintiff was fairly groomed; had adequate eye contact; cooperative behavior; congruent affect; linear thought processes; no suicidal or homicidal ideations; no auditory or visual hallucinations; and fair insight and judgment (id. (citing id. at 563)); and (7) an August 20, 2009, MSE reporting identical findings to those reported by the VA on August 18, 2009, although also noting "passive suicidal ideation" (id. (citing id. at 581)).

The ALJ gave "great weight" to the opinions in the June 2, 2008, "Narrative Report (Adult)," referenced above, completed by Dr. Roh, another treating psychiatrist at Riverside County Mental Health.[4] (Id. at 13, 15 (citing id. at 287).) The ALJ found that Dr. Roh's report was supported by the record and consistent with Plaintiff's ability to perform unskilled work in a non-public setting. (Id. at 15.) Dr. Roh diagnosed Plaintiff with dysthymic disorder. (Id. at 287.) Dr. Roh noted that there was evidence of depression, decreased energy, isolation, apathy, social withdrawal, affective flattening, and an inability to adapt to new or stressful situations. (Id.) He also noted that Plaintiff's thoughts were clearly organized; he

---

[4] Plaintiff does not allege error with regard to the ALJ's reliance on Dr. Roh's opinion.

1  evidenced no delusions, hallucinations, or phobias, his memory and judgment

2  were intact, he had the ability to maintain a sustained level of concentration,

3  sustain repetitive tasks for an extended period, and interact appropriately with

4  family, strangers, and co-workers, but not supervisors or authority; his attitude was

5  pleasant; and he was able to complete a forty-hour work week without

6  decompensating.  (Id.)  He noted Plaintiff's prognosis as stable.  (Id.)

7      The ALJ also gave "some weight" to the opinions of consulting psychiatrist,

8  Edward P. O'Malley, M.D., who prepared a June 23, 2008, Psychiatric Review

9  Technique.  (Id. at 15 (citing id. at 288-98).)  Dr. O'Malley found that the

10 objective medical evidence supported a finding that Plaintiff's affective disorder

11 was not severe.  (Id. at 288.)  He also found that Plaintiff had mild limitations in

12 activities of daily living, maintaining social functioning, and maintaining

13 concentration persistence or pace; and had one to two episodes of

14 decompensation.  (Id. at 296.)  The ALJ found the report only partially supported

15 by the record and consistent with Plaintiff's ability to perform unskilled work in a

16 non-public setting.  (Id. at 16.)  He also found, however, that the record supported

17 more moderate limitations in social functioning than found by Dr. O'Malley.  (Id.)

18 The ALJ properly gave more weight to the evidence that was consistent with the

19 record as a whole.

20     Moreover, the ALJ's determination was well supported by objective clinical

21 findings.  Andrews, 53 F.3d at 1041 (it is solely the province of the ALJ to resolve

22 conflicts in medical opinion evidence).  In support of his argument, Plaintiff

23 specifically points to two reports containing global assessment of functioning

24 ("GAF") scores:  a December 14, 2007, mental health intake reporting a GAF

25

26

27

28

1   score of 25 (AR at 207),[5] and a February 7, 2008, intake reporting a GAF score of

2   50 (id. at 325).[6]

3       As a threshold matter, the Commissioner has no obligation to credit or even

4   consider GAF scores in the disability determination.  See 65 Fed. Reg. 50746,

5   50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the multiaxial

6   evaluation system endorsed by the American Psychiatric Association.  It does not

7   have a direct correlation to the severity requirements in our mental disorders

8   listings."); see also Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th

9   Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in

10  formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's

11  failure to reference the GAF score in the RFC, standing alone, does not make the

12  RFC inaccurate.").  GAF scores include a significant number of non-medical

13  factors, such as homelessness and legal troubles, that do not necessarily translate

14  into work-related functional impairments.  DSM-IV 33.

15      In this case, the GAF scores were assessed on days when Plaintiff was

16  hospitalized for substance abuse.  In February 2008, when assessed with the GAF

17  of 50, Plaintiff had abused substances in the park, got drunk, and woke up in the

18  treatment facility.  (AR at 320.)  The intake form reflects that Plaintiff reported his

19  two most recent hospitalizations had been in December 2007 "for drinking too

20

21  _____

22      [5]  A GAF score between 21 and 30 falls into the category described as

23  follows:  "Behavior is considerably influenced by delusions or hallucinations OR
    serious impairment in communication of judgment (e.g., sometimes incoherent,

24  acts grossly inappropriately, suicidal preoccupation) OR inability to function in
    almost all areas (e.g., stays in bed all day; no job, home, or friends).  DSM-IV 34.

25

26      [6]  A GAF score between 41 and 50 falls into the "serious symptoms"

27  category, described as "(suicidal ideation, severe obsessional rituals, frequent
    shoplifting) OR any serious impairment in social, occupational, or school

28  functioning (e.g., no friends, unable to keep a job)."  DSM-IV 34.

much." (Id. at 326 (internal quotation marks omitted).)  He also stated that he did not remember much of November or December 2007.  (Id. at 328.)

Indeed, it was during the December 2007 hospitalization that Plaintiff was initially assessed at his December 11, 2007, intake, with a GAF score of 25.  (Id. at 178, 207.)  He reported at that time that he had become very depressed, and drowned his depression in alcohol.  (Id. at 208.)  He also apparently had stated he wanted to kill himself and had cut himself on the left wrist with a knife.  (Id. at 178.)  However, at the time of discharge three days later, on December 14, 2007, the GAF score had improved to 63,[7] and the discharging doctor reported that Plaintiff was alert, cooperative, oriented, goal-directed and logical, with no evidence of suicidal or homicidal ideation or psychosis, had good judgment and impulse control, and his prognosis was "fair-to-good with the recommended treatment."  (Id. at 179.)  Thus, Plaintiff's reliance on the GAF scores of 25 and 50, scores that reflect Plaintiff's episodes of decompensation due to substance abuse, is misplaced.

In fact, the ALJ provided detailed findings on Plaintiff's ongoing problems with alcohol.  (Id. at 9-10, 14-15.)  He noted that "[t]he record suggests that the claimant's alcohol use contributed to the occurrence of auditory or visual hallucinations."  (Id. at 15.)  He went on to cite several instances to support this finding.[8]  (Id.)  He noted that Plaintiff's mental health treatment, including regular

_____

[7]  A GAF score between 61 and 70 and 50 falls into the "Some mild symptoms" category, described as "(e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well . . . ."  DSM-IV 34.

[8]  He referenced (1) a July 18, 2007, report from Riverside Mental Health that Plaintiff had been found in a ditch with an empty bottle of alcohol; (2) a
(continued...)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

participation in a 12-step program, was effective in stabilizing his mental condition.  (Id. at 14.)

Plaintiff also relies on an August 20, 2008, Narrative Report completed by Dr. Amador.  Although Dr. Amador again indicated Plaintiff could not maintain a sustained level of concentration, sustain repetitive tasks for an extended period, adapt to new or stressful situations, interact appropriately with others except family, and could not complete a forty-hour work week without decompensating, that report also indicates that Petitioner exhibits clearly organized thoughts, intact memory, intact judgment, pleasant attitude, and a stable prognosis.  (Id. at 360.) Dr. Amador also noted that "[d]epression seems to be under control [and the] [o]nly thing bothering [Plaintiff] is insomnia at this time."  (Id.)  The ALJ specifically rejected this assessment as internally inconsistent with the mental status findings.  (Id. at 16 (citing id. Ex. 9F/3).[9])  Plaintiff did not otherwise contest the ALJ's finding regarding this report.

Similarly, although Plaintiff also relies on an August 19, 2008, Narrative Report signed by an unnamed clinician, that report while indicating Plaintiff was unable to complete a forty-hour work week without decompensating, also indicated his thoughts were clearly organized, no evidence of hallucinations, delusions, or paranoid thoughts, intact memory, mildly impaired judgment, depression, anxiety, and an inability to manage his own funds due to his substance

_____

[8](...continued)
February 2, 2008, alcohol blackout; and (3) the February 26, 2009, VA report that Plaintiff was drinking between one pint to 1/5 of whiskey per day and reported depression, anxiety, hopelessness, and auditory or visual hallucinations, as well as that he was taking medications and "boozing at the same time."  (AR at 15 (citations omitted).)

[9]  Exhibit 9F/3 corresponds with page 360 of the AR.

1  abuse history.  (Id. at 306.)  The report also indicated Plaintiff's prognosis was
2  stable.  (Id.)  The ALJ noted this report in his decision in discussing mental status
3  examinations that "were consistently unremarkable," and with indication that
4  Plaintiff's "mental status was stable."  (Id. at 13 (citing id. Ex. 8F/3).[10])  Plaintiff
5  did not otherwise contest the ALJ's finding regarding this report.

6      The ALJ also properly rejected Dr. Amador's opinion as unduly reliant on
7  Plaintiff's subjective complaints.[11]  Tommasetti v. Astrue, 533 F.3d 1035, 1041
8  (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to
9  a large extent' on a claimant's self-reports that have been properly discounted as
10 incredible."); Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding
11 that an ALJ properly discounted two treating doctors' opinions because they were
12 in the form of a checklist, did not have supportive objective evidence, were
13 contradicted by other statements and assessments of the claimant's medical
14 condition and were based on the claimant's subjective descriptions of pain).  The
15 ALJ properly discounted Plaintiff's credibility, and Plaintiff does not submit any
16 contentions asserting error with this finding.

17     The ALJ also properly found that Dr. Amador's August 24, 2009, MSE was
18 internally inconsistent with his conclusion.  Specifically, Dr. Amador's conclusion
19 that Petitioner was unable to complete a normal work week, sustain concentration
20 or repetitive tasks, or interact appropriately with others is internally inconsistent
21 with his findings that Plaintiff's thought processes were concrete, he had only
22 mildly impaired memory, there was no report of inappropriate affect, no suicidal
23 or homicidal ideations, no social withdrawal, and only moderately impaired

---

25  [10]  Exhibit 8F/3 corresponds with page 306 of the AR.  Although unclear as
26 to whether this opinion is from an acceptable medical source, the ALJ discussed it
27 as if it was.

28  [11]  Plaintiff does not contend that the ALJ's credibility finding was error.

1
2
3

judgment.  (AR at 599.)  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1433 (9th Cir. 1995) (explaining that internal contradiction is a specific, legitimate reason for rejecting a treating physician's opinion).

4
5
6

Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence of record to discount Dr. Amador's opinions.  Thus, there was no error.

7
8

**C.    The ALJ Properly Considered Plaintiff's RFC.**

9
10
11
12
13
14
15
16
17

Plaintiff contends that it was error for the ALJ not to include Dr. Amador's 2009 limitations in the ALJ's RFC, because the limitations set forth in Dr. Amador's report "have significant vocational ramifications because the functional impairments affect the plaintiff's ability to perform and sustain full-time work in any work-related environment."  (JS at 24.)  Specifically, Plaintiff claims that the reported inability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, adapt to new or stressful situations, or complete a forty-hour work week without decompensating, would "clearly impact his working capabilities and the jobs he is able to competently perform."  (<u>Id.</u>)

18
19
20
21
22
23
24
25

In determining a claimant's disability status, an ALJ has a responsibility to determine the claimant's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence.  20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); <u>see also</u> Soc. Sec. Ruling 96-8p.  As previously discussed, the ALJ properly relied on the numerous MSEs by Plaintiff's treating physicians, and gave appropriate weight to the Narrative Report of Dr. Roh, all of which constituted substantial evidence in support of the ALJ's RFC finding.

26
27
28

Even if it was error not to include Dr. Amador's findings, the Court agrees with Defendant that any error was harmless, as additional findings at Step Four

and Five would be needed if Plaintiff had been found disabled.  That is, the ALJ would then have to determine whether Plaintiff's alcohol and drug use were a contributing factor in a finding of "disabled."[12]

Given the extensive evidence in the record, including in Dr. Amador's report, that Plaintiff's drinking and drug abuse were ongoing throughout the adjudicatory period, that Plaintiff's failure to regularly and fully participate in group therapy sessions or his 12-step program were detrimental to his progress, that is disorders were induced by alcohol use (see, e.g., AR at 306, 437), and that alcohol contributed to Plaintiff's blackouts, hallucinations, and other issues (id. at 15, 306, 323, 326), it is more than likely that Plaintiff would not be able to meet his burden of showing objective medical evidence proving that he has disabling impairments notwithstanding his alcohol and drug use.  42 U.S.C. § 405(g).

Accordingly, the Court finds that the ALJ's RFC determination was consistent with the other evidence of record relied on by the ALJ, particularly the various MSE reports, and the Narrative Report of Dr. Roh.  Thus, the Court finds that there was no error and, even if there was error, it was harmless.

**D.    The ALJ Posed a Complete Hypothetical to the VE.**

Plaintiff contends that the hypotheticals posed to the VE did not incorporate Dr. Amador's findings regarding Plaintiff's inability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, or complete a

---

[12]  If an ALJ determines that the claimant is disabled, and there is evidence of substance abuse, the ALJ must then determine whether the substance abuse is a contributing factor material to the disability, i.e., whether the claimant would still be disabled if she stopped abusing drugs or alcohol.  20 C.F.R. §§ 404.1535, 416.935 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability"); see also Bustamente v. Massanari, 262 F.3d 949, 954-55 (9th Cir. 2001).

15

forty-hour work week without decompensating.  (JS at 16-17.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record."  Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)).  Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist.  See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).  As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations.  Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

In his hypothetical to the VE, the ALJ asked if a hypothetical person who did not have exertional limitations, but who would be limited to working primarily with things, rather than with people, could perform Plaintiff's past relevant work. (AR at 61.)  The VE found that such an individual could perform that work and alternatively identified several other occupations that would be available.  (Id. at 62.)

As the Court concluded above, the record evidence did not support the more extreme limitations and conclusion of Dr. Amador, and that opinion was properly discounted by the ALJ.  Accordingly, the ALJ was not obligated to include those limitations in his hypothetical to the VE.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ

16

did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

The ALJ gave great weight to Dr. Roh's opinions that Plaintiff was able to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, and interact appropriately with others, including family, friends, and co-workers.  (AR at 15.)  In fact, the ALJ's limitation to working with things, rather than people, gives Plaintiff every benefit of the doubt and is arguably more restrictive then Dr. Roh's opinion would warrant.

Because the ALJ properly discounted Dr. Amador's opinion, and gave great weight to Dr. Roh's opinions, and because the ALJ's RFC and hypothetical to the VE was supported by the evidence of record, the ALJ appropriately relied on the VE's testimony.  Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  In short, the Court finds that the ALJ presented a complete hypothetical question to the VE.  Thus, there was no error.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: September 20, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge

17